**Joseph W. Charles, P.C.**
Attorneys at Law
5704 West Palmaire Avenue
P.O. Box 1737
Glendale, Arizona 85311-1737
(623) 939-6546
(623) 939-6718 Fax
coachjoe@joecharles.com

Joseph W. Charles, #003038
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
## PHOENIX DIVISION

| | |
|---|---|
| James W. Close, | |
| Plaintiff, | Case No. |
| v. | **VERIFIED COMPLAINT** |
| Cigar King, LLC, | Filed Electronically |
| Defendant. | |

### INTRODUCTION

1. Plaintiff James W. Close brings this action against the Defendant and asserts that its website is not accessible to blind and visually impaired consumers in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (the "ADA") and its implementing regulations, and the Arizonans with Disabilities Act ("AzDA"), A.R.S. § 41-1492, *et seq*. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies related to its web-based technologies so that Defendant's website will become, and will remain, accessible. The website at issue is www.cigarking.com (the "Website").

2. Plaintiff's address is c/o Joseph W. Charles, his attorney 5704 W. Palmaire, Glendale, Arizona 85301.

3. While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

4. Blind and visually impaired consumers must use screen reading software or other assistive technologies in order to access website content. Defendant's Website contains digital barriers which limit the ability of blind and visually impaired consumers to access the site.

5. Plaintiff has attempted to patronized Defendant's Website in the past and plans to continue to access Defendant's Website. However, unless Defendant is required to eliminate the access barriers at issue, and required to change its policies so that access barriers do not reoccur on Defendant's Website, Plaintiff will continue to be denied full access to the Website as described and will be deterred from fully using Defendant's Website.

6. The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> [i]n the case of violations of ... this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities...Where appropriate, injunctive relief shall also include requiring the modification of a policy...

42 U.S.C. § `12188(a)(2).

7. Because Defendant's Website has never been accessible and because Defendant does not have, and has never had, a corporate policy that is reasonably calculated to cause its Website to become, and remain, accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

   a) that Defendant retain a qualified consultant acceptable to Plaintiff "Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Website so that it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");

   b) that Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in the website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

   c) that Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether a Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

   d) that Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a regular basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis; and

   e) that Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll free phone number to report accessibility-related problems.[1]

**JURISDICTION AND VENUE**

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

9. Plaintiff's claims asserted herein arose in this judicial district and Defendant

---

[1] Web-based technologies contain features and content which are modified on a daily or even hourly basis. A one time "fix" an inaccessible feature of a website will not insure that the website will continue to remain accessible without a corresponding change of corporate policies related to its' web-based technologies. In order to evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies relative to web-based technologies have been changed in a meaningful, and effective, manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis utilizing both automated accessibility evaluation tools coupled with end user testing by disabled individuals with various disabilities.

1   does substantial business in this judicial district.

2   10.   Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

**PARTIES**

11.   Plaintiff, JAMES W. CLOSE, is and, at all times relevant hereto, has been a resident of the State of Texas currently residing within the State of Texas.  Plaintiff is and at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA 42 U.S.C. § 1210(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

12.   Defendant CIGAR KING, LLC, is an Arizona Limited Liability Company headquartered at 7830 E Gelding #100, Scottsdale, AZ 85260.  Defendant conducts sales of cigars, cigar accessories, watches, shaving accessories and other items domestically, and internationally, to the general public, through its website.  Defendant's website is a public accommodation pursuant to 42 U.S.C. § 12181(7).

**FACTUAL BACKGROUND**

13.   The internet has become a significant source of information and a means for conducting everyday activities such as shopping, banking, etc., for sighted, blind and visually-impaired persons, as well as individuals with other perceptual or motor disabilities.

14.   Blind individuals may access websites by utilizing keyboards in conjunction with screen reader software and/or other assistive technologies that convert text to audio.  Screen reader software provides the primary method by which a blind

person may independently use the internet. Unless websites are designed to be read by screen reader software, or other assistive technologies, blind individuals are unable to fully access websites and the information, products and services available through the sites.

15. The international website standards organization, W3c, has published WCAG 2.0 AA. WCAG 2.0 AA provides widely accepted guidelines for making websites accessible to individuals with disabilities. These guidelines have been endorsed by the United States Department of Justice and numerous federal courts.

16. Through its Website Defendant offers information in regards to its locations, properties, availability and booking information.

17. Plaintiff is legally blind and utilizes screen reader software in order to access the internet, read and navigate website content.

18. Plaintiff has attempted to utilize Defendants Website to make purchases. Despite several attempts to use and navigate the Website, Plaintiff has been denied the full use and enjoyment of the facilities, goods and services available on the website as a result of access barriers to the site. If the barriers were removed Plaintiff would utilize the Website in the future.

19. The barriers at the Website have caused a denial of Plaintiff's full and equal access multiple times in the past, and currently deter Plaintiff from utilizing Defendant's website and will continue to deter Plaintiff from future use and enjoyment of the website.

20. The access barriers at the Website are numerous. Issues are rated, by W3c, on levels of severity with 100% being the most critical (i.e. having the greatest impact upon those with low or no vision). Ninety-five (95) issues of varying severity have been identified, the most notable include, but are not limited to, the following:

a) <u>IMAGE MISSING ALT ATRIBUTE</u>
5 Incidences. 97% Severity Level Web Content Accessibility Guidelines (WCAG) 2.0, Level A: 1.1.1 *Non-text Content All images must have an alt attribute. Not supplying an alt attribute will mean that users who cannot see the image will not understand what the image conveys.*

b) <u>FORM ELEMENT HAS NO LABEL</u>
3 Incidences. 91% Severity Level. Web Content Accessibility Guidelines (WCAG) 2.0, Level A: 1.3.2 Meaningful Sequence. *Code was found which uses deprecated methods to define colors. This sometimes cannot be overridden or disabled by custom CSS or by turning CSS off.*

c) <u>BLANK HEADING ELEMENT FOUND</u>
3 Incidences. 100% Severity Level. Web Content Accessibility Guidelines (WCAG) 2.0, Level A:1.3.1. Info and Relationships *This heading element has no text within it. Headings are an important wayfinding and page-level navigation mechanism for screen reader users and each heading should provide clear and informative text.*

d) <u>LINK USES INVALID HYPERTEXT REFERENCE</u>
23 Incidences 100% Severity Level Web Content Accessibility Guidelines (WCAG) 2.0 Level A: 4.1.2. *Name, Role, Value. This link's href attribute does not conform to RFC1630 which defines the proper construction of URIs. The behavior, in certain scenarios, may not match the intended behavior.*

e) <u>LINK HAS NO TEXT INSIDE</u>
39 Incidences 100% Severity Level Web Content Accessibility Guidelines (WCAG) 2.0 Level A: 2.4.4 *Link Purpose (In Context)The purpose of each link can be determined from the link text alone or from the link text together with its programmatically determined link context, except where the purpose of the link would be ambiguous to users in general. 2.4.9 Link Purpose (Link Only) A mechanism is available to allow the purpose of each link to be identified from link text alone, except where the purpose of the link would be ambiguous to users in general.*

21. The deficiencies in Defendant's Website prohibits a customer, utilizing screen reader software, from having the text of the website, and its' images, vocalized. As a result, visually impaired individuals are unable to determine what is on a website, browse the sites, look for store locations, review discount programs and specials and/or make any purchases.

22. If the Website were accessible, Plaintiff could independently use and navigate Defendant's website and would utilize the Website in the future.

23. Though Defendant has centralized policies regarding the maintenance and operation of its Website, Defendant has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable, by blind people.

24. Without injunctive relief, Plaintiff and other blind individuals will continue to be unable to independently use the Website in violation of their rights under the ADA.

**SUBSTANTIVE VIOLATION**
**(Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)**

25. The allegations contained in the previous paragraphs are incorporated by reference.

26. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."
42 U.S.C. § 12182(a)

27. Defendant's Website is a public place of accommodation within the definition of Title III of the ADA 42 U.S.C. § 12181(7).

28. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in, or benefit from, the goods, services, facilities, privileges, advantages or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

29. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in, or benefit from, the

goods, services, facilities, privileges, advantages or accommodations, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

30. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination includes, among other things: "a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantage or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of such goods, services, facilities, privileges, advantage or accommodations being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii); *see also* 28 C.F.R. § 36.303(b).

31. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is blind and has a disability that substantially limited the major life activity of seeing within the meaning of 42 U.S.C. §§ 12102(1)(A) and (2)(A), has been denied full and equal access to Defendant's Website. He has not been provided services that are provided to other patrons who are not disabled, and/or has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

32. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein,

## SECOND CAUSE OF ACTION

## VIOLATION OF THE ARIZONANS WITH DISABILITIES ACT

(On behalf of Plaintiff and against all Defendants (A.R.S. §42-1492 *et seq.*))

33. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, all the allegations contained in all prior paragraphs of this Complaint.

34. Defendants own, operate, lease or lease to others brick and mortar places of public accommodation, more specifically hotel and/or extended stay lodging facilities. As part of Defendant's business model it utilizes a Website to attract customers, promote the business, provide rental information and as a portal to check rates, availability and to make reservations. As such, Defendants are required to ensure that persons with disabilities, in this specific case visual disabilities, are not discriminated against and that they are able to utilize the public accommodations of Defendant. This requirement extends to Defendant's Website. Defendant has failed meet these obligations in this case in which they were required to maintain compliance under the Arizonans with Disabilities Act. Violations of the federal ADA are *per se* violations of the AzDA such that Plaintiff is entitled to identical relief under state law, which state law adds the provision of an award of damages to the Plaintiff, as he is under federal law.

35. AzDA provides for penalties of up to $5,000.00 for a first violation; and up to $10,000.00 for a second violation of the AzDa. This is Defendant's "second violation". Defendant has previously been a Defendant alleging ADA violations, commenced in this Court, in June 2015, as case number 2:15-cv-01104-JZB. The passing of nearly one year

9

has certainly afforded Defendant sufficient time in which to audit, or have an audit performed, to ensure that it has sufficient policies and procedures in place to identify, and remedy, its non-compliance with the ADA and AzDA. It has apparently chosen not to make the decision to end its discriminatory practices and bring itself into compliance under its obligations under the ADA or AzDA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

a. A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action to insure that its Website is fully accessible to, and independently usable by, disabled individuals;

b. Irrespective of Defendant's "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, and WCAG 2.0 AA guidelines so that the Websites are fully accessible to, and independently usable by, disabled individuals and which directs that the Court shall retain jurisdiction for a period after Defendant certifies that its Website is fully in compliance with the relevant requirements of the ADA, and compliant with WCAG 2.0 AA guidelines to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

c. Irrespective of Defendant's "voluntary cessation" of the ADA violation, if applicable, payment of costs of suit;

      d.    Irrespective of Defendant's "voluntary cessation" of the ADA violation, if applicable, payment of attorneys' fees pursuant to 42 U.S.C. §12205, 28 CFR § 36.505 and other principles of law and equity and in compliance with the "prevailing party" and "material alteration" of the parties' relationship doctrines in an amount of not less than $4,500.00; and

      e.    Order that Defendant's Website, a place of public accommodation, be taken offline until Defendant it has fully complied with the ADA;

      f.    A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of AzDA; and

      g.    Irrespective of the Defendants "voluntary cessation" of the ADA violation, if applicable, a permanent injunction pursuant to AzDA which directs Defendant to take all steps necessary to bring its website into compliance with the requirements set forth in AzDA, and its implementing regulations, so that the Website are fully accessible to, and independently usable by, disabled individuals and which directs that the Court shall retain jurisdiction for a period after Defendant certifies that its Website is fully in compliance with the relevant requirements of AzDA, and compliant with WCAG 2.0 AA guidelines to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

      h.    For damages in an amount of not less than $10,000.00 for a violation of AzDA based upon this being a "second violation" by Defendant;

      i.    For such further relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 25th day of January, 2017.

   /s/ Joseph W. Charles
Joseph W. Charles, #003038
Attorney for Plaintiff

**Joseph W. Charles, P.C.**
5704 West Palmaire Avenue
P.O. Box 1737
Glendale, Arizona 85311-1737
(623) 939-6546
(623) 939-6718 Fax
coachjoe@joecharles.com

**VERIFICATION**

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 17th day of January, 2017

/s/ James W. Close
Electronic Signature Authorized